No. 25-2605

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

ESTATE OF TEION YASIN COOPER,
through its Special Administrator, Julius Andriusis,
BARBARA SHAREE THOMAS, in her own right and
M. T., a minor child by her mother, Barbara Sharee Thomas (her legal guardian),

*Plaintiffs - Appellants*,

v.

MILWAUKEE COUNTY, THOMAS DURAND and LEON MARTIN,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Eastern District of Wisconsin
Case No. 2:25-cv-00530-WCG
The Honorable Judge William C. Griesbach

**APPELLANTS' BRIEF**

ANDRIUSIS LAW FIRM, LLC
Julius Andriusis
Wisconsin State Bar No. 1053784
Attorneys for Appellants

985 West Oklahoma Avenue
Milwaukee, WI 53215
Telephone: (414) 831-7929
andriusis@andriusislaw.com

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 2:25-cv-530

Short Caption: Estate of Teion Yasin Cooper, et al v. Milwaukee County, et al

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Barbara Sharee Thomas, in her individual capacity M.T. (a minor), daughter of Barbara Sharee Thomas

and Teion Yasin Cooper; Estate of Teion Yasin Cooper

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Julius Andriusis of Andriusis Law Firm LLC


(3)     If the party, amicus or intervenor is a corporation:

i)         Identify all its parent corporations, if any; and

No corporations are represented in this action.

ii)        list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

Does not apply

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

Does not apply

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Does not apply

Attorney's Signature: s/ Julius Andriusis          Date: December 11, 2025

Attorney's Printed Name:  Julius Andriusis

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ☑   No ☐

Address:  Andriusis Law Firm, LLC 985 West Oklahoma Avenue Milwaukee, WI 53215


Phone Number: (414) 831-7929                    Fax Number:  (414) 645-5512

E-Mail Address: andriusis@andriusislaw.com

# TABLE OF CONTENTS

Disclosure Statement ....................................................................................................... ii

Table of Contents ............................................................................................................ iii

Table of Authorities ........................................................................................................ iv

Jurisdictional Statement ....................................................................................................1

Statement of the Issues Presented for Review ..................................................................1

Statement of the Case .......................................................................................................3

      I. Relevant Facts............................................................................................................3

      II. Procedural History and Ruling Presented for Review ...................................................5

Summary of the Argument.................................................................................................5

Argument ...........................................................................................................................7

Conclusion ........................................................................................................................23

Certificate of Compliance with FRAP Rule 32 ...............................................................25

Circuit Rule 30(d) Statement ...........................................................................................26

Attached Required Short Appendix...................................................................................26

Certificate of Service .......................................................................................................43

# TABLE OF AUTHORITIES

**Cases**

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)...................................................................23

*Betts v. Brady*, 316 U. S. 455 (1942) .........................................................................................9

*Brower v. County of Inyo*, 489 U. S. 593 (1989) ........................................................................8

*Campbell v. White*, 916 F. 2d 421 (CA7 1990) .........................................................................8

*County of Sacramento v. Lewis,* 523 U.S. 833 (1998) ........................................................ *passim*

*Estate of Soakai v. Abdelaziz*, 137 F.4th 969 (9th Cir. 2025) .............................................19, 20

*Findlay v. Lendermon*, 722 F.3d 895 (7th Cir. 2013) ...............................................................14

*Fosnight v. Jones*, 41 F.4th 916 (7th Cir. 2022) .......................................................................11

*Foman v. Davis*, 371 U.S. 178 (1962) .................................................................................20, 21

*Hope v. Pelzer*, 536 U.S. 730 (2002) ........................................................................................14

*Horton v. Pobjecky*, 883 F.3d 941 (7th Cir. 2018) ...................................................................18

*Johnson v. Glick*, 481 F. 2d 1028 (CA2), *cert. denied*, 414 U. S. 1033 (1973) ........................8, 9

*Law Offices of David Freydin, P.C. v. Chamara,* 24 F.4th 1122 (7th Cir. 2022) .......................20

*Scott v. Edinburg*, 346 F.3d 752 (7th Cir. 2003) ......................................................................14

*Scott v. Harris*, 550 U.S. 372 (2007) .......................................................................................18

*Spiegel v. Cortese*, 196 F.3d 717 (7th Cir. 1999) ......................................................................14

*United States v. Lanier*, 520 U. S. 259 (1997) ..........................................................................15

*Wilson v. Layne*, 526 U.S. 603 (1999) ................................................................................14, 15

*Zion v. County of Orange*, 874 F.3d 1072 (9th Cir. 2017) ........................................................19

**Statutes**

28 U.S.C. § 1291 ................................................................................................................1

28 U.S.C. § 1331 ................................................................................................................1

28 U.S.C. § 1343(a)(3) .......................................................................................................1

28 U.S.C. § 1367 ................................................................................................................1

42 U.S.C. § 1983 ........................................................................................................ *passim*

Wis. Stat. § 908.045(4) .....................................................................................................16

Wis. Stat. § 908.01(4)(b) ..................................................................................................16

Wis. Stat. § 802.08 ...........................................................................................................23

**Other Authorities**

Eighth Amendment ............................................................................................................10

Fourteenth Amendment  ............................................................................................. *passim*

Fed. R. App. P. 32(a)(7)(b) ..............................................................................................25

Federal Rules of Civil Procedure Rule 12(c) ............................................................. *passim*

## JURISDICTIONAL STATEMENT

This Court has jurisdiction of this appeal pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 1367, and 1291.

Relevant facts establishing jurisdiction under 28 U.S.C. § 1331 include that the United States District Court has "original jurisdiction of all civil actions under the Constitution, laws, or treaties of the United States" and this case raises issues about potential constitutional violations of civil rights.

Relevant facts establishing jurisdiction under 28 U.S.C. § 1343(a)(3) include that this case alleges civil rights violations by Milwaukee County Sheriff's Department deputies acting under color of state law.

Relevant facts establishing jurisdiction under 28 U.S.C. § 1367 include that the District Court had supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy (state law claims).

Relevant facts establishing jurisdiction of this Court under 28 U.S.C. § 1291 are that a final decision was rendered by the District Court and jurisdiction of appeals from all final decisions of the district courts of the United States are vested in the United States Court of Appeals for that district. This appeal is from a final order or judgment that disposes of all parties' claims.

## STATEMENT OF THE ISSUES

1.     Whether the District Court erred in its application of to the facts of this case by failing to distinguish between the plaintiff in *County of Sacramento v. Lewis,* 523 U.S. 833 (1998) (hereafter *Lewis*) who was a party fleeing from the police (a "suspect") who by his

1

behavior forfeited his right to sue alleging violations of his constitutional rights and the Appellants herein, who were innocent third parties and not "suspects" whose constitutional rights were not subject to forfeiture and entitled to protection under the law.

**Answered by the District Court**:  No.  The District Court found that *Lewis* barred the claims of deprivation of constitutional rights for *suspects* and *non-suspects* alike, despite the language in *Lewis* limiting that holding to fleeing suspects.

2.      Whether with regard to qualified immunity the Appellants presented cases that put the constitutional questions in this case "beyond debate."

**Answered by the District Court**:  No. [Despite the language to the contrary in *Lewis*], the District Court having determined that *non-suspects'* constitutional rights are to be subject to forfeiture in the same manner as *fleeing suspects'* constitutional rights in a high-speed automobile police pursuit, the Court concluded that "§1983 protects Appellants from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices" and therefore the Defendants-Appellees (hereafter "Defendants") are entitled to qualified immunity.

3.      Whether the District Court erred by adopting the position of Defendants that the "termination" of the police pursuit in this matter was volitional,  suggesting that matters of fact have been *proven* that are directly contradicted by available video evidence, and thus viewed the underdeveloped (at this pre-discovery stage of the case) evidence available to the District Court in the light most favorable to the *Defendants* contrary to the standards requiring the evidence to be viewed in the light most favorable to the *Plaintiffs*.

**Answered by the District Court**:  No.  The District Court (by implication) seems to have adopted a factual determination set forth in Defendants' Brief in Support of their Federal

Rules of Civil Procedure (hereafter "FRCP") Rule 12(c) motion that the pursuing officers in this high-speed chase voluntarily "terminated" the high-speed pursuit, improperly suggesting an appreciation of the dangers involved and acting out of concern for potential innocent victims. The use of the term "terminate" seems to imply a state of mind of the police officers in which they intentionally made a determination to discontinue the pursuit *voluntarily* to protect members of the public such as the Plaintiffs, when in fact the officers actually *lost control of their vehicle and crashed* their cruiser as is clearly evident in the dash cam video.

<div align="center">

**STATEMENT OF THE CASE**

</div>

### I.     RELEVANT FACTS

The facts as summarized by the District Court in its <u>Decision and Order Granting Defendants' Motion for Judgment on the Pleadings</u> (*See* R. 24) are supported by the record as follows:

On Tuesday, May 24, 2022, at 6:06 p.m., Milwaukee County Sheriff Deputies Durand and Martin were on duty in a squad car driven by Deputy Durand. (*See* R. 1, ¶ 14) The Deputies were traveling southbound on North Sherman Boulevard in Milwaukee County (*See* R. 1, ¶ 14). Upon approaching the intersection of North Sherman Boulevard and West Hope Avenue, the Deputies spotted a white Infiniti owned and operated by Javon Alexander heading northbound on North Sherman Boulevard toward the same intersection (*See* R. 1, ¶ 15). The Deputies observed Alexander move into the far right "distress" lane as he approached the intersection. When the light turned green, instead of turning right as expected, Alexander proceeded straight through the intersection and merged into traffic (*See* R. 1, ¶¶ 15-16).

Deputy Durand decided to initiate a traffic stop. He made a U-turn, activated his emergency lights, and pursued the white Infiniti (*See* R. 1, ¶ 17). Having noticed the squad car

<div align="center">3</div>

with emergency lights pursing him, Alexander accelerated his car in an attempt to flee the Deputies (*See* R. 1, ¶ 18). The Deputies then engaged in a high-speed pursuit of the vehicle (*See* R. 1, ¶ 18).

The high-speed pursuit proceeded northbound on North Sherman Boulevard, eastbound on Silver Spring Drive, southbound on North Hopkins Street, and finally eastbound on West Sheridan Avenue (*See* R. 1, ¶ 19). The pursuit occurred in a densely populated residential area during the evening rush hour of a school night (*See* R. 1, ¶ 23). During the pursuit, the two vehicles drove through an intersection in excess of 50 m.p.h., narrowly avoiding collisions with cross-traffic (*See* R. 1, ¶ 21). When the Deputies passed signs stating, "school speed limit 20 mph," the Deputies' vehicle accelerated to a speed of 81 m.p.h. (*See* R. 1, ¶ 22). The Deputies also sped past the Barack Obama School of Career and Technical Education on a night when school was in session at a speed of 93 m.p.h. (*See* R. 1, ¶ 23) In his effort to evade the Deputies, Alexander reached speeds approaching or exceeding 100 m.p.h. (*See* R. 1, ¶ 18).

As Deputy Durand attempted to turn left onto West Sheridan Avenue, he lost control of the squad car and crashed into a parked vehicle, thereby terminating the pursuit 2 minutes and 23 seconds after it began (*See* R. 1, ¶ 24). Alexander continued to travel at high speeds down West Sheridan Avenue. Alexander drove through a stop sign at the intersection of West Sheridan Avenue and 37th Street and crashed into the vehicle driven by Cooper (*See* R. 1, ¶ 25). The crash resulted in Cooper's death and injuries to M.T. and Thomas (*See* R. 1, ¶ 25).

Alexander was prosecuted in Milwaukee County Circuit Court Case No. 22CF003599, *State of Wisconsin v. Javon L. Alexander* (*See* R. 1, ¶ 26). He pled guilty to one count of hit and run involving death, one count of hit and run involving great bodily harm, and one count of hit

and run involving injury (*See* R. 1, ¶ 26).  On April 12, 2024, Alexander was sentenced to a total of 12 years of initial confinement and eight years of extended supervision (*See* R. 1, ¶ 27).

## II.    PROCEDURAL HISTORY AND RULING PRESENTED FOR REVIEW

Notice of the instant tort claim was provided to Milwaukee County hereinafter "the County") by service of a <u>Notice of Claim and Injury</u> on September 2, 2022 (*See* R. 1, ¶ 4), and thereafter a more detailed <u>Amended Notice of Injury</u> was served upon George L. Christenson, Milwaukee County Clerk, on October 6, 2023 (*See* R. 1, ¶ 4).  More than 120 days passed and The Estate of Teion Yasin Cooper (hereafter "The Estate") received no notification of the denial or acceptance of responsibility for the claim from the County (*See* R. 1, ¶ 4).  On April 11, 2025, in instant <u>Complaint</u> was filed in this matter (*See* R. 1, ¶ 1).  The Appellees filed a <u>Motion for Judgment on the Pleadings</u> on June 30, 2025 (*See* R. 18) and <u>Brief in Support</u> of their motion on June 30, 2025 (*See* R. 19).  On July 16, 2026, the Plaintiffs filed their <u>Brief in Opposition to Defendants' Motion for Judgment on the Pleadings</u> (*See* R. 22).  On July 23, 2025, the Appellees filed their <u>Reply Brief</u> (*See* R. 23).  On August 15, 2025, the District Court rendered and issued its <u>Decision and Order Granting Defendants' Motion for Judgment on the Pleadings</u>  (*See* R. 24). The District Court entered a <u>Judgment in a Civil Case</u> (*See* R. 25) on August 15, 2025.  The <u>Notice of Appeal</u> was timely filed in the District Court on September 11, 2025 (*See* R. 26).  The <u>Docketing Statement</u> was timely filed in the District Court on September 11, 2025 (*See* R. 29).

## SUMMARY OF THE ARGUMENT

The District Court determined that Plaintiffs herein, innocent bystanders in this matter, are to be treated from a legal perspective the same as fleeing suspects in terms of having waived their constitutional Due Process rights and forfeiting their right to sue based on their criminal

conduct in fleeing the police resulting in a high-speed chase and injuries to the fleeing suspect(s) (*See* R. 24, P. 6; *see also* <u>Argument</u>, Page 8 *supra*).

*County of Sacramento v. Lewis,* 523 U.S. 833 (1998) holds that the improper ulterior motives which led to this high-speed meet the standard of "shocking the conscience" making such conduct actionable under 42 U.S.C. § 1983 (*See* <u>Argument</u>, Pages 8-9 *supra*).

The District Court decided this matter on constitutional Due Process grounds, by finding no violation of the Plaintiffs' rights despite the allegations that the pursuit was based on racial profiling and was designed to "teach the suspect a lesson, or to get even (*See* R. 24, P. 6; *see also* <u>Argument</u>, Page 8 *supra*)."

The District Court concluded that the Complaint does not allege violations of the plaintiffs' constitutional or statutory rights that were "clearly established" at the time of the violation such that a reasonable official would understand that what he is doing violates that right. (*See* R. 24, P. 9; *see also* <u>Argument</u>, Page 14 *supra*).

The District Court determined that if the state of mind of the Defendants is free of any culpable intent to harm potential Plaintiffs physically or to "worsen their legal plight" *without further inquiry* those facts *standing alone* are dispositive of this case pursuant to *Lewis* at the FRCP 12(c) stage (*See* R. 24, *passim*). This analysis does not account for allegations of Defendants' improper and racially motivated incentive in both initiating and maintaining the high-speed pursuit which were allegedly to "teach the suspect a lesson, or to get even (*See* R. 24, P. 6; *see also* <u>Argument</u>, Page 12 *supra*)."

<div align="center">

**ARGUMENT**

**SECTION ONE: FLEEING SUSPECTS OR INNOCENT BYSTANDERS?**

</div>

The plaintiffs in this action were innocent bystander victims of an automobile collision directly resulting from a high-speed police pursuit by the defendant Sheriff deputies in which the deputies were pursuing Javon L. Alexander (hereafter "**Alexander**"), who had committed a minor traffic infraction in the deputies' presence (*See* R. 1, ¶ 20). None of the Plaintiffs were fleeing the police; **Alexander** was fleeing the police (*See* R. 1, ¶ 19).

*Lewis* is a case unlike the present one in which the plaintiff therein – one of two suspects fleeing on a motorcycle – was held to have forfeited his substantive due process constitutional rights through his conduct in *participation in the criminal act of fleeing from the police* resulting in a high-speed pursuit chase. This case provides guidance as to the standard of review related to claims such as the present case.

The United States Supreme Court's opening paragraph summarized their findings by stating:

> The issue in this case is whether a police officer violates the Fourteenth Amendment's guarantee of substantive due process by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender. We answer no, and hold that in such circumstances only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation.

In reaching its conclusions, the Court made several statements indicating how lower courts ought to treat claims related to high-speed police pursuits when reviewing a <u>Complaint</u> to determine its sufficiency under a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(c).

<div align="center">

7

</div>

In its review of the 9th Circuit Court of Appeals reversal of the District Court's determination to grant the FRCP 12(c) motion, the majority noted:

> The Court of Appeals for the Ninth Circuit reversed, holding that "the appropriate degree of fault to be applied to high-speed police pursuits is deliberate indifference to, or reckless disregard for, a person's right to life and personal security," 98 F. 3d 434, 441 (1996), and concluding that "the law regarding police liability for death or injury caused by an officer during the course of a high-speed chase was clearly established" at the time of Philip Lewis's death, *id.*, at 445.

<p style="text-align:center">* * *</p>

> We granted certiorari, 520 U. S. 1250 (1997), to resolve a conflict among the Circuits over the standard of culpability on the part of a law enforcement officer for violating substantive due process in a pursuit case.

As one winds their way through the opinion, the cases being reviewed by the Supreme Court involve claims filed by *fleeing suspects* (or their estates).

The Court cites to *Brower v. County of Inyo*, 489 U. S. 593, 596–597 (1989), stating "pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit," but accidentally stopped ***the suspect*** by crashing into him. *Id.*, at 597,

The Court next cites *Campbell v. White*, 916 F. 2d 421, 423 (CA7 1990): (following *Brower* and finding no seizure where a police officer accidentally struck and killed a *fleeing* motorcyclist during a high-speed pursuit), *cert. denied*, 499 U. S. 922 (1991.

In setting the groundwork for an analysis of the claims before it, the Court noted:

> "Most recently, in *Collins v. Harker Heights, supra*, at 128, we said again that the substantive component of the Due Process Clause is violated by executive action only when it "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." While the measure of what is conscience shocking is no calibrated yard stick, it does, as Judge Friendly put it, "poin[t] the way." *Johnson v. Glick*, 481 F. 2d 1028, 1033 (CA2), *cert. denied*, 414 U. S. 1033 (1973).

<p style="text-align:center">8</p>

The Court next set forth the three basic levels of conduct as they relate to whether a deprivation of Due Process rights has occurred: Negligent acts, "recklessness" (or "gross negligence"), and intentional acts.

> We have accordingly rejected the lowest common denominator of customary tort liability as any mark of sufficiently shocking conduct, and have held that the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.

<div align="center">* * *</div>

> It is, on the contrary, behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.

<div align="center">* * *</div>

> Whether the point of the conscience shocking is reached when injuries are produced with culpability falling within the middle range, following from something more than negligence but "less than intentional conduct, such as recklessness or 'gross negligence,' " *id.*, at 334, n. 3, is a matter for closer calls.

<div align="center">* * *</div>

> Deliberate indifference that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking.

<div align="center">* * *</div>

> That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial." *Betts v. Brady*, 316 U. S. 455, 462 (1942).

<div align="center">* * *</div>

> *Graham v. Connor*, 490 U. S., at 397 ("[P]olice officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving"). A police officer deciding whether to give chase must balance on one hand the need to stop a suspect and show that flight from the law is no way to

freedom, and, on the other, the highspeed threat to all those within stopping range, be they suspects, their passengers, other drivers, or bystanders.

* * *

When such extended opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking. But when unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates "the large concerns of the governors and the governed." *Daniels v. Williams*, 474 U. S., at 332. Just as a purpose to cause harm is needed for Eighth Amendment liability in a riot case, so it ought to be needed for due process liability in a pursuit case. Accordingly, we hold that high-speed chases with no intent to harm *suspects* physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983 (*emphasis* added) .

Justice Breyer's concurring opinion sheds light on the limitations of the Court's holding as regards affecting claims brought by *fleeing suspects*:

There is a real danger in announcing a rule, or suggesting a principle, that in some cases a suspect is free to ignore a lawful police command to stop. No matter how narrow its formulation, any suggestion that *suspects* may ignore a lawful command to stop *and then sue for damages* sustained in an ensuing chase might cause suspects to flee more often, increasing accidents of the kind which occurred here (*emphasis* added).

Justice Scalia's concurring opinion sheds additional light on the limitation of the Court's holding:

Adhering to our decision in *Glucksberg*, rather than ask whether the police conduct here at issue shocks my unelected conscience, I would ask whether our Nation has traditionally protected the right respondents assert. The first step of our analysis, of course, must be a "careful description" of the right asserted, *Glucksberg, supra*, at 721. Here the complaint alleges that the police officer deprived Lewis "of his Fourteenth Amendment right to life, liberty and property without due process of law *when he operated his vehicle with recklessness, gross negligence and conscious disregard for his safety*. (*emphasis* added).

Scalia continues:

Here, for instance, it is not fair to say that it was the police officer alone who "deprived" Lewis of his life. Though the police car did run Lewis over, it was the driver of the motorcycle, Willard, who dumped Lewis in the car's path by recklessly making a sharp left turn at high speed. (Willard had the option of

rolling to a gentle stop and showing the officer his license and registration.) Surely Willard "deprived" Lewis of his life in every sense that the police officer did. And if Lewis encouraged Willard to make the reckless turn, Lewis himself would be responsible, at least in part, for his own death. Was there contributory fault on the part of Willard or Lewis? Did the police officer have the "last clear chance" to avoid the accident? Did Willard and Lewis, by fleeing from the police, "assume the risk" of the accident?"

Unquestionably, the District Court's analysis of the forfeiture of a plaintiff's right to allege viable claims related to purported violations of Due Process constitutional rights ought to relate directly to the *conduct of the plaintiff*. Had the plaintiff in this matter been **Alexander** (the *fleeing suspect*), there is no question but that the District Court's dismissal of this action would have been appropriate.

**Alexander** is not the plaintiff herein; he was the fleeing suspect who by his behavior forfeited his rights. The Plaintiffs in this action are the very bystanders envisioned by the Supreme Court as having substantive and procedural Due Process rights, the violation of which by the pursuing officers under these circumstances involving allegedly racial motivation for initiating and continuing the high-speed chase "shocks the conscience."

Had the Court permitted this matter to continue to the discovery phase (discovery having been 'suspended' pending the outcome of this appeal – (*See* R. 17, "Brief in Support of Defendants Milwaukee County, Thomas Durand, and Leon Martin's Motion to Stay Discovery Pending Resolution of their Motion for Judgment on the Pleadings"), the Court could have in a subsequent motion for summary judgment (assuming no material facts were in dispute) determined any number of factors that bear on whether these Defendants are entitled to a finding that they had not violated the Due Process rights of the Plaintiffs, and were entitled to qualified immunity.

For instance, was the will of the people as it was expressed by the people through their elected representatives by their having limitations placed on high-speed police pursuits through densely populated urban areas (*See* R. 1, ¶ 20), and if so, is the will of the people something that officers can blatantly disregard when engaging in pursuits which indicate that the pursuit was, for example, without a legitimate law enforcement objective but rather to "teach the suspect a lesson, or to get even?" Worse, when the evidence establishes that the Defendants are permitted to engage in such misconduct without fear of investigations, reprisals, the imposition of discipline, or personal liability, has the will of the people been usurped?

The Complaint alleges that the Milwaukee County Sheriff's Department has historically failed to train, supervise, investigate, or bring disciplinary cases with substantive penalties against deputies relating to violations of the established high-speed pursuit standards both in terms of *initiating* the pursuits and more importantly, *continuing* the pursuits (when an obvious danger to the public is readily apparent) areas (*See* R. 1, ¶ 32).

Absent the historical deterrent against police abuse provided by 42 U.S.C. § 1983 regarding potential personal civil liability, and with absolutely no meaningful oversight of their conduct, why would any deputy give any regard whatsoever to the will of the people that the public and innocent bystanders be protected or the constitutional Due Process violations of innocent victims encouraged by the overexpansive application of *Lewis* suggested by the District Court beyond the limits of its current language to suggest that pursuing police officers can willfully and knowingly violate their own departmental policies, the will of the people, common sense, regard for the safety of innocent people, as well as their own personal moral integrity and simply do as they please even if their motive in initiating and maintaining the high-speed pursuit were to "teach the suspect a lesson, or to get even."

<u>**SECTION TWO: QUALIFIED IMMUNITY**</u>

The District Court next focused on whether Plaintiffs established (in the context of qualified immunity) whether existing law supports the conclusion that constitutional violations occurred here, when "§1983 protects Appellants from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices (*See* R. 24, P. 9)," and therefore the Defendants are entitled to qualified immunity." Once again, *Lewis* provides the standard of review for this Court to follow in analyzing this FRCP 12(c) motion appeal.

The District Court, having decided the matter on constitutional Due Process grounds (*See* R. 24, P. 6-7), by finding no violation of the Plaintiffs' rights despite the allegations that the pursuit based on racial profiling was designed to "teach the suspect a lesson, or to get even" nevertheless addressed the question of qualified immunity in what is arguably *dicta* and therefore merely an alternative ground for reaching the same disposition. *Dictum* is defined in Black's Law Dictionary as

> A remark by that is an observation or remark made by a judge in pronouncing an opinion upon a cause, concerning some rule, principle, or application of law, or the solution of a question suggested by the case at bar, but not necessarily involved in the case or essential to its determination; any statement of the law enunciated by the court merely by way of illustration, argument, analogy, or suggestion. *See Railroad Co. v. Schutte*,103 U. S. 118, 143, 26 L. Ed. 327; *In re Woodruff* (D. C.) 96 Fed. 317; *Hart v. Stribling*. 25 Fla. 433, 6 South. 455; *Buchner v. Railroad Co.*, 60 Wis. 264, 19 N. W. 56; *Rush v. French*, 1 Ariz. 99, 25 Pac. 816; *State v. Clarke*, 3 Nev. 572.

Regardless of whether the Court's pronouncements are *dicta*, it is nevertheless prudent for Plaintiffs to address the Court's conclusions in the event this Court were to find Defendants' contentions relating to qualified immunity were not addressed by the Plaintiffs in this brief, resulting in a waiver of their objections to those findings or orders.

The District Court wrote:

"Although qualified immunity is an available affirmative defense to defendants in a § 1983 suit, the plaintiff has the burden to overcome the defense. *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999) (*See* R. 24, P. 7). Qualified immunity requires the plaintiff to show "(1) conduct violating the plaintiff's constitutional or statutory rights that is (2) clearly established at the time of the violation such that a reasonable official would understand that what he is doing violates that right." *Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013) (internal quotation marks omitted) (*See* R. 24, P. 7)."

Plaintiffs have not identified, and the court has not found, a controlling case or robust collection of persuasive authority analogous to the facts presented here that clearly establishes that the Deputies' conduct violated Plaintiffs' constitutional rights. Instead, Plaintiffs rely on the Deputies' alleged violations of Milwaukee County policy to establish that the constitutional right at issue was clearly established. But a violation of a county policy is not a violation of the Constitution. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices."). Plaintiffs have not presented cases that put the constitutional questions in this case beyond debate. Accordingly, the Deputies are entitled to qualified immunity on Plaintiffs' claim (*See* R. 24, P. 8).

The United States Supreme Court has expressly rejected the idea that a right is clearly established "unless the very action in question has previously been held unlawful." *See Wilson v. Layne*, 526 U.S. 603, 615 (1999). Instead, the crux of the inquiry is whether the official can fairly be said to have had "fair notice" that they were acting unconstitutionally. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). As stated in *Wilson*:

"[C]learly established" for purposes of qualified immunity means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity ***unless the very action in question has previously been held unlawful***, but it is to say that in the light of preexisting law the unlawfulness must be apparent." Id., at 640 (citations omitted); *see also United States v. Lanier*, 520 U. S. 259, 270 (1997) (***emphases*** added).

Regardless, Plaintiffs assert that the clear language in *Lewis* itself provides all of the notice that a tribunal or even a deputy sheriff needs to understand that qualified immunity is not forfeited by *all* parties in *all* high-speed chases under *all* circumstances.

The *Lewis* Court's favorable citation to this language confers all of the notice a deputy might need:

> A police officer deciding whether to give chase must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the highspeed threat to all those within stopping range, be they suspects, their passengers, other drivers, or bystanders.

The allegations in the <u>Complaint</u>, taken in a light most favorable to Plaintiffs (as the law requires under a FRCP 12(c) motion), allege that:

> "39. DURAND and MARTIN completely ignored the very obvious need for the safety of the public in the area of the pursuit, including the type of area, time of day, the amount of vehicular and pedestrian traffic (*e.g.*, school zones) and the speed of the pursuit relative to these factors. Literally, this was a divided highway, one of Milwaukee's main arterials, it was the evening of a school night, there was both vehicular and pedestrian traffic everywhere, they sped at excessive speeds past churches and through 20 M.P.H. school zones, and the speeds reached more than 90 miles per hour. It is very nearly impossible to have violated more of the high speed vehicle pursuit policies than DURAND and MARTIN did in this less-than-three-minute fatal high speed pursuit.

> * * *

> 41. That there is no evidence whatsoever that Teion Yasin Cooper was in any was contributorily negligent in causing the collision that resulted in his own death, the responsibility therefore resting solely with the officers who foolishly decided to "fire the bullet" by conducting a high speed vehicle pursuit involving a traffic infraction in a densely populated residential area that included churches and schools on its route, and the "bullet" himself, ALEXANDER.

> 42. That the "bullet fired into the crowd" by DURAND and MARTIN inevitably found its mark and took the life of Teion Yasin Cooper. That the actions of DURAND and MARTIN proximately caused the injuries and death of Teion Yasin Cooper and injuries to his daughter M. T. and M. T.'s mother BARBARA. That the hereinabove described actions of DURAND and MARTIN shock the conscience in that they acted with deliberate indifference and/or reckless disregard of the rights of Teion Yasin Cooper, his daughter, and her mother.

The history of jurisprudence and *Lewis* itself provide the District Court with sufficient controlling cases or robust collection of persuasive authority analogous to the facts presented here.

<u>**SECTION THREE: LIGHT MOST FAVORABLE**</u>

Defendants suggest in their <u>Brief in Support</u> of their motion to dismiss that if the state of mind of the Defendants is free of any culpable intent to harm potential Plaintiffs physically or to "worsen their legal plight" *without further inquiry* those facts standing alone are dispositive of this case pursuant to *Lewis* at the FRCP 12(c) stage even if Defendants' motives in initiating and maintaining the high-speed pursuit were alleged to have been to "teach the suspect a lesson, or to get even (*See* R. 19, "<u>Defendants, Milwaukee County, Thomas Durand, and Leon Martin's Brief in Support of Motion for Judgment on the Pleadings</u>" at page 6)." Here, *Lewis* and its progeny guide this court's analysis and standard of review.

Had this matter been allowed to proceed to the discovery phase by the denial of the FRCP 12(c) motion, at depositions the states of mind of the pursuing officers could be examined to aid the finder of fact in determining whether the deputy testified to a state of mind evincing their actual intentions by making admissions including flat out admitting that the reason they decided to "go for it" in this case was the race of the defendant.

Such statements of course would be admissible *statements against interest* (*See* Wis. Stat. § 908.045(4) and *admissions of a party opponent* (*See* Wis. Stat. § 908.01(4)(b)) After all, if the deputies appear at their depositions with instructions from counsel that under *Lewis* they need only avoid making statements they did not have "any culpable intent to harm potential Plaintiffs physically" or to "worsen their legal plight" they might very well unwittingly make statements including admissions and statements against interest as to their *true* intentions regarding whether "the officer subjectively intended to act, not to further a legitimate law enforcement purpose, but instead to induce lawlessness, to terrorize, to cause harm, to kill, to teach the suspect a lesson, or to get even."

In a stunning statement found in their <u>Brief in Support</u> the Defendants make the following statement suggesting a *volitional* termination of the high-speed pursuit by the Defendants, acting in the public's interests:

> The facts here are even more attenuated than in *Lewis*, where the Court rejected liability despite a more direct police connection. Here, not only was it not the Deputies' vehicle that struck the Plaintiffs, but the Deputies had already terminated their pursuit prior to the collision. (*Id.* ¶ 24).

<div align="center">* * *</div>

> The Deputies' pursuit had terminated by the time Alexander's vehicle struck Plaintiffs, and nothing in existing law would have made it "sufficiently clear" that the Deputies' prior conduct violated a constitutional right.

Oh what a difference the turn of a phrase makes! "the Deputies had already terminated their pursuit" versus "the Deputies crashed their vehicle" seems, at best, a disingenuous recitation of the obvious facts in evidence. Unfortunately, although the District Court *initially* seemed to acknowledge this misstatement, it added an even more troubling conclusion, stating:

> As Deputy Durand attempted to turn left onto West Sheridan Avenue, he lost control of the squad car and crashed into a parked vehicle, thereby terminating the pursuit 2 minutes and 23 seconds after it began. ***Even though the pursuit had effectively been terminated***, Alexander continued to travel at high speeds down West Sheridan Avenue (***emphasis*** added).

Unfortunately, by stating that "even though the pursuit had effectively been terminated, **Alexander** continued to travel at high speeds down West Sheridan Avenue" the District Court implies that **Alexander** was aware of the "termination" of the police pursuit and continued to flee at a high speed *despite that knowledge*, implying a conscious use of judgment by the Defendants which is clearly contraindicated by the available dashcam video of the pursuit, just as the Defendants had done in suggesting that the Defendants "already terminated their pursuit."

In an analogous situation, this Court in *Horton v. Pobjecky*, 883 F.3d 941 (7th Cir. 2018), stated:

<div align="center">17</div>

Although on summary judgment we generally view the facts in the light most favorable to the nonmovant, in rare circumstances when video footage clearly contradicts the nonmovant's claims, we may consider that video footage without favoring the nonmovant. *Scott v. Harris*, 550 U.S. 372, 378–81 (2007) ("The Court of Appeals … should have viewed the facts in the light depicted by the videotape."). This is because on summary judgment we view the facts in the light most favorable to the nonmovant only if there is a genuine dispute about those facts. *Id.* at 380. ***When video footage firmly settles a factual issue, there is no genuine dispute about it, and we will not indulge stories clearly contradicted by the footage*** (***emphases*** added).

This Court is encouraged to review the video of this incident to once and for all remove any and all questions about the incredibly foolish nature of this high-speed pursuit, including whether the initiation of the pursuit was racially motivated based on 9 prior traffic warnings issued and 26 prior traffic citations issued resulting in a "bounty" being placed on **Alexander** to "teach the suspect a lesson;" whether the "termination" of the pursuit was volitional or the result of the deputies having lost control of their vehicle and crashing; whether **Alexander** could literally physically have even been aware of the "termination" of the police pursuit (whether voluntarily or due to crashing) and continued to flee at a high speed despite that knowledge; whether the prior contacts with **Alexander** suggests a racial motive in initiating and continuing the high-speed chase; among other facts necessary to a proper resolution of this matter.

The video is already part of the record in this matter, referenced in the only footnote in the Complaint (*See* R. 1) by inclusion of a (then) active internet URL allowing direct access to the video and denoted as "(last accessed April 15, 2025)."

[1]   The entire dash cam video was posted online and is available at: https://x-defaultstgec.uplynk.com/ausw/slices/a55/44c3f81cadf84cf5a6f 4e6d100388208/a5509f616655471a95a60a4cd18f7889/a5509f616655471a95a60a 4cd18f7889_e.mp4 (last accessed April 15, 2025).

In preparation of this Brief, Plaintiffs double-checked to make certain that the link was still "live" and functioning. As oftentimes is the case, internet links become stale and no longer work, and that happened here at some point in the last eight months.

In consultation with the Office of the Clerk of Courts for the 7th Circuit Court of Appeals, the following URL link is hereby referenced herein and is a universally accessible (without password or other restriction) link to the exact same video: https://youtu.be/IoE_0UbTDjE (last accessed December 11, 2025).

In addition to the foregoing, at the recommendation of the Clerk, a <u>Motion to Modify the Record</u> will be filed in the District Court seeking modification of the <u>Complaint</u> by replacing the placeholder URL which has gone stale with the link cited above.

Finally, in *Estate of Soakai v. Abdelaziz*, 137 F.4th 969 (9th Cir. 2025), the 9th Circuit Court of Appeals in interpreting *Lewis*, recently held:

> At the motion-to-dismiss stage, the key question is whether, accepting all well-pleaded allegations of fact as true, the officer subjectively intended to act, not to further a legitimate law enforcement purpose, but instead to induce lawlessness, to terrorize, to cause harm, to kill, to teach the suspect a lesson, or to get even. *Porter*, 546 F.3d at 1140–41; *see also Zion v. County of Orange*, 874 F.3d 1072, 1077 (9th Cir. 2017) (holding that an officer could be liable for a physical assault if he "was acting out of anger or emotion rather than [to achieve] any legitimate law enforcement purpose").

The instant <u>Complaint</u> contains among other things the following allegations:

20. In effect, this high speed pursuit of a municipal traffic violator in a densely populated urban center during the evening rush hour on a (Tuesday) school night past churches and schools, in 30 M.P.H. zones reduced to 20 M.P.H. in school zones, was of such a reckless nature that this high speed vehicle pursuit was the legal equivalent of DURAND and MARTIN firing a loaded gun into a crowd with the inevitable consequence of harm coming to innocent bystanders such as M. T., Barbara S. Thomas and Teion Yasin Cooper which inevitable and foreseeable harm in fact occurred, forever destroying this family (*See* R. 1, ¶ 20).

Presumably, this reference in the <u>Complaint</u> to "firing a loaded gun into a crowd" satisfied the requirement that the <u>Complaint</u> allege that the deputies' state of mind was "not to

further a legitimate law enforcement purpose" but rather to "teach the suspect a lesson, or to get

even." The Court in *Estate of Soakai* continued:

> The fundamental question for the purpose of deciding whether Plaintiffs have stated a substantive due process claim is whether Defendants' alleged conduct shocks the conscience. *Porter*, 546 F.3d at 1137. "[C]onduct intended to injure in some way unjustifiable by any government interest" sits at the far "end of the culpability spectrum" and, therefore, "is the sort of official action most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849. We see no reason to think that conduct is any less shocking when it injures someone other than the intended target, particularly when harm to a third party is a clear, known risk and is entirely foreseeable.

> We therefore hold that Plaintiffs have stated a substantive due process claim by plausibly alleging that they, as bystanders, were injured when Defendants engaged in a high-speed chase for the purpose of harming the fleeing suspect without a legitimate law enforcement objective.

Pursuant to both United States Supreme Court (*See Foman v. Davis*, 371 U.S. 178

(1962)) precedent and this Circuit's own precedent (*See Law Offices of David Freydin, P.C. v.*

*Chamara,* 24 F.4th 1122 (7th Cir. 2022) this Court is obliged absent specific exceptions not

relevant hereto to remand this matter to the District Court with directions to permit Plaintiffs to

amend their <u>Complaint</u> to more specifically detail the manner in which they allege, for instance,

that the deputies' state of mind was "not to further a legitimate law enforcement purpose" but

rather to "teach the suspect a lesson, or to get even" due to his race, as described above and more

fully set forth below.

> In *Foman v. Davis* at page 182 the United States Supreme Court held:

> Rule 15 (a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. *See generally,* 3 Moore, Federal Practice (2d ed. 1948), ffT 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules

require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules (*See Foman v. Davis*, 371 U.S. 178 at 182).

Naturally, in order to be eligible for such a remand, in accord with *Foman*, this Court is guided by its own precedent on this issue, *Fosnight v. Jones*, 41 F.4th 916, 924–25 (7th Cir. 2022), which states:

> "[g]ranting leave to amend is pointless when the plaintiff fails to 'suggest to the court the ways in which [he] might cure the defects.'"

In compliance with the requirement that the Plaintiffs must show the manner in which they would amend the Complaint if leave to do so were granted, Plaintiffs would offer the following modifications in support of its claims that *Lewis* does not compel the dismissal of this case when viewing the evidence in the "light most favorable" to the Plaintiffs:

> Clarifying and modifying the instant Complaint's original paragraphs 18 and 20:
>
> 18. ... "an African American man who is familiar with the sordid history of interactions by and between African American men and local law enforcement in Milwaukee County"] (*See* R. 1, ¶ 18).
>
> 20. In effect, this high speed pursuit of a municipal traffic violator in a densely populated urban center during the evening rush hour on a (Tuesday) school night past churches and schools, in 30 M.P.H. zones reduced to 20 M.P.H. in school zones, was of such a reckless nature that this high speed vehicle pursuit was the legal equivalent of DURAND and MARTIN firing a loaded gun into a crowd with the inevitable consequence of harm coming to innocent bystanders such as M. T., Barbara S. Thomas and Teion Yasin Cooper which inevitable and foreseeable harm in fact occurred, forever destroying this family (*See* R. 1, ¶ 20).

Plaintiffs propose the following modifications:

> The decision to engage in a high-speed chase for a minor traffic infraction in violation of departmental rules of engagement after having identified the suspect, **Anderson**, as an African American, evinced a racial motive for engaging in the high-speed pursuit with the intent to harm the fleeing suspect without a legitimate

law enforcement objective in the first instance but rather to "teach the suspect a lesson, or to get even."

<center>*  *  *</center>

The decision to continue the high-speed chase for a minor traffic infraction in violation of departmental rules of engagement after having identified the suspect, **Anderson**, as an African American, evinced a racial motive for continuing the high-speed pursuit with the intent to harm the fleeing suspect without a legitimate law enforcement objective but rather to "teach the suspect a lesson, or to get even."

As the dissenter in *Estate of Soakai* noted: "the bystander Plaintiffs here showed a clearly established due process violation even though the allegations establish that the police officers intended to harm only the suspect—not the bystanders.

Should this matter be remanded, the District Court will have the opportunity to more fully review the dashcam video and related body cam videos in this matter related to the history of police interactions with **Alexander**, which could certainly enlighten the District Court as to the state of mind of the defendant deputies, who would also be compelled to appear for examination as to their states of mind at a deposition upon remand and the lifting of the stay on discovery. As well, with discovery stayed records from the Milwaukee County Sheriff's Department and any disciplinary reviews are presently unavailable to plaintiffs.

When discovery is complete, either party can then bring a <u>Motion for Summary Judgment</u> pursuant to FRCP 56 (for related Wisconsin state claims, Wis. Stat. § 802.08) and if they are able to establish that all of the material facts necessary to a resolution of the matter are undisputed and the law favors their position, they will prevail. But deciding a FRCP 12(c) motion in the absence of all of the material and relevant discoverable facts being before the Court – as is the case at this early stage of the proceedings – without granting Plaintiffs the opportunity to amend

<center>22</center>

their <u>Complaint</u> as set forth above would be clear error under both United States Supreme Court and this Circuit's own existing precedent.

<div align="center">**<u>CONCLUSION</u>**</div>

This FRCP 12(c) motion challenges the sufficiency of the complaint. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), Justice Stevens's dissent outlined the standard of review adopted by the majority in Section II of his dissent at page 6:

> "In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id., at 45–46 (*See Twombly*, 550 U.S. 544 dissent at page 6).

<div align="center">* * *</div>

Continuing at Section II, page 8:

> "[w]hen a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Id., at 236 (emphasis added) (*See Twombly*, 550 U.S. 544 dissent at page 8).

This case clearly does not involve "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, (or) futility of amendment …"

Rule 15 (a) declares that leave to amend "shall be freely given when justice so requires." Plaintiffs affirmatively assert that justice and precedent compel the remand of this matter to enable Plaintiffs to amend their Complaint to satisfy and meet the purportedly legitimate

objections of the Defendants, and allow the matter to be decided on its merits rather than on a purportedly technically deficient <u>Complaint</u>.

<div style="margin-left:45%">
Respectfully submitted,<br>
s/Julius Andriusis<br>
Wisconsin State Bar #1053784
</div>

Andriusis Law Firm, LLC<br>
985 West Oklahoma Avenue<br>
Milwaukee, WI 53215<br>
Telephone: (414) 831-7929<br>
<u>andriusis@andriusislaw.com</u>

## CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32

Briefs less than 30 pages do not require a certificate of compliance. Fed. R. App. P. 32(a)(7)(b).

Electronically signed by
s/ Julius Andriusis
ANDRIUSIS LAW FIRM, LLC
985 West Oklahoma Avenue
Milwaukee, WI 53215
Attorneys for Appellants

## Circuit Rule 30(d) Statement

Pursuant to Circuit Rule 30(d), counsel certifies that all material required by Circuit Rule 30(a) and (b) are included in the appendix.

There are no "other opinions, orders, or oral rulings in the case that address the issues sought to be raised;" "opinions or orders in the case rendered by magistrate judges or bankruptcy judges that address the issues sought to be raised;" "opinions, orders, findings of fact and conclusions of law rendered in the case by administrative agencies;" this is a civil action and not "a collateral attack on a criminal conviction;" and that there are no "order[s] concerning a motion for new trial, alteration or amendment of the judgment, rehearing, and other relief sought under Rules 52(a) or 59, Fed. R. Civ. P, in this matter; and that there are no "opinions, memoranda of decision, findings of fact and conclusions of law, or oral statement of reasons delivered by the trial court or administrative agency upon the rendering of that judgment, decree, or order."

Dated at Milwaukee, Wisconsin this 11th day of December, 2025.

<div style="text-align:right">

Electronically signed by
s/ Julius Andriusis
Wisconsin State Bar No. 1053784
Attorneys for Appellants

</div>

985 West Oklahoma Avenue
Milwaukee, WI 53215
Telephone: (414) 831-7929
andriusis@andriusislaw.com

**<u>ATTACHED REQUIRED SHORT APPENDIX</u>**

**TABLE OF CONTENTS**

Table of Contents..............................................................................................................27

Relevant docket entries in the proceeding below:

    (R. 25) Judgment in a Civil Case..................................................................................28

    (R. 24) Decision and Order Granting Defendants' Motion for Judgment on the Pleadings......29

There are no "Additional Contents" Per Circuit Rule 30(b) thus there is no separately bound <u>Appendix</u>.

# United States District Court
### EASTERN DISTRICT OF WISCONSIN

ESTATE OF TEION YASIN COOPER,
by Special Administrator Julius Andriusis, et al.,

Plaintiffs,

v.

MILWAUKEE COUNTY, et al.,

Defendants.

**JUDGMENT IN A CIVIL CASE**
Case No. 25-C-530

☐     **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒     **Decision by Court.** This action came before the Court for consideration.

     **IT IS HEREBY ORDERED AND ADJUDGED** that Plaintiffs' federal claims are DISMISSED and the Court relinquishes jurisdiction over Plaintiffs' remaining state law claims pursuant 28 U.S.C. § 1367(c)(3).

     Dated:   August 15, 2025

                               LINDA M. KLEMM
                               Interim Clerk of Court

                               s/ Kyle W. Frederickson
                               (By) Deputy Clerk

---

ESTATE OF TEION YASIN COOPER,
by Special Administrator Julius Andriusis, et al.,

               Plaintiffs,

               v.                           Case No. 25-C-530

MILWAUKEE COUNTY, et al.,

               Defendants.

---

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

---

This case arises from a motor vehicle collision that occurred during the course of a high-speed police chase in Milwaukee, Wisconsin. When two Milwaukee County Sheriff Deputies attempted to stop a vehicle taking flight after committing a traffic violation, the driver of the fleeing vehicle collided with a vehicle operated by Teion Yasin Cooper and occupied by his minor daughter, M.T., and his daughter's mother, Barbara Sharee Thomas. The crash resulted in Cooper's death and injuries to M.T. and Thomas.

The Estate of Teion Yasin Cooper, M.T., and Thomas brought this action seeking monetary damages against Milwaukee County and the sheriff deputies involved, Leon Martin and Thomas Durand (the Deputies). The complaint asserts four claims: (1) a Fourteenth Amendment due process claim against the Deputies under 42 U.S.C. § 1983; (2) a similar claim against the County under *Monell v. Department of Social Services*, 436 U.S. 658 (1978); (3) a negligence claim against the Deputies under state law; and (4) an indemnification claim under state law. The court has jurisdiction over Plaintiffs' § 1983 claims under 28 U.S.C. § 1331 and supplemental jurisdiction

over the state law claims pursuant to 28 U.S.C. § 1367. This case is before the court on Defendants' motion for judgment on the pleadings. For the following reasons, Defendants' motion will be granted and the case will be dismissed.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017) (citing *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The court must draw all reasonable inferences and view all facts in the light most favorable to the plaintiff. *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017). The court is not, however, "obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002). To survive a motion for judgment on the pleadings, the complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## ALLEGATIONS CONTAINED IN THE COMPLAINT

On Tuesday, May 24, 2022, at 6:06 p.m., Milwaukee County Sheriff Deputies Durand and Martin were on duty in a squad car driven by Deputy Durand. The Deputies were traveling southbound on North Sherman Boulevard in Milwaukee County. Upon approaching the intersection of North Sherman Boulevard and West Hope Avenue, the Deputies spotted a white

2

Infiniti owned and operated by Javon Alexander heading northbound on North Sherman Boulevard toward the same intersection. The Deputies observed Alexander move into the far right "distress" lane as he approached the intersection. When the light turned green, instead of turning right as expected, Alexander proceeded straight through the intersection and merged into traffic.

Deputy Durand decided to initiate a traffic stop. He made a U-turn, activated his emergency lights, and pursued the white Infiniti. Having noticed the squad car with emergency lights pursing him, Alexander accelerated his car in an attempt to flee the Deputies. The Deputies then engaged in a high-speed pursuit of the vehicle.

The high-speed pursuit proceeded northbound on North Sherman Boulevard, eastbound on Silver Spring Drive, southbound on North Hopkins Street, and finally eastbound on West Sheridan Avenue. Plaintiffs contend that the pursuit occurred in a densely populated residential area during the evening rush hour of a school night. During the pursuit, the two vehicles drove through an intersection in excess of 50 m.p.h., narrowly avoiding collisions with cross-traffic. When the Deputies passed signs stating, "school speed limit 20 mph," the Deputies' vehicle accelerated to a speed of 81 m.p.h. The Deputies also sped past a church, traveling 86 m.p.h., as well as the Barack Obama School of Career and Technical Education on a night when school was in session at a speed of 93 m.p.h. In his effort to evade the Deputies, Alexander reached speeds approaching or exceeding 100 m.p.h.

As Deputy Durand attempted to turn left onto West Sheridan Avenue, he lost control of the squad car and crashed into a parked vehicle, thereby terminating the pursuit 2 minutes and 23 seconds after it began. Even though the pursuit had effectively been terminated, Alexander continued to travel at high speeds down West Sheridan Avenue. Alexander drove through a stop

3

sign at the intersection of West Sheridan Avenue and 37th Street and crashed into the vehicle driven by Cooper. The crash resulted in Cooper's death and injuries to M.T. and Thomas.

Alexander was prosecuted in Milwaukee County Circuit Court Case No. 22CF003599, *State of Wisconsin v. Javon L. Alexander*. He pled guilty to one count of hit and run involving death, one count of hit and run involving great bodily harm, and one count of hit and run involving injury. On April 12, 2024, Alexander was sentenced to a total of 12 years of initial confinement and eight years of extended supervision.

Plaintiffs allege that the Deputies violated Plaintiffs' substantive due process rights, secured by the Fourteenth Amendment to the United States Constitution, and Milwaukee County policy by initiating and continuing to pursue Alexander based solely on a traffic violation. They assert that the Deputies failed to balance the safety of the public with the need to apprehend Alexander. Plaintiffs contend that Deputy Durand lacked the driving skills necessary to safely engage in the pursuit and that, by failing to attempt to dissuade Deputy Durand from starting or continuing the pursuit, Deputy Martin is complicit and culpable in the outcome. In addition, Plaintiffs allege that Milwaukee County failed to properly train, discipline, and supervise its sheriff deputies regarding high-speed residential area vehicle pursuits. Finally, Plaintiffs allege that the Deputies were negligent and that the County is required to indemnify them for such liability under Wis. Stat. § 895.46.

## ANALYSIS

### A. Fourteenth Amendment Due Process Claim against the Deputies

Plaintiffs assert that the Deputies deprived them of their substantive rights under the Due Process Clause of the Fourteenth Amendment. Specifically, Plaintiffs allege that the Deputies acted with "deliberate indifference" and "conducted themselves so recklessly that a trier of fact

4

would be entitled to find subjective knowledge of an unjustifiable risk to human life and conscious disregard of that risk." Compl. ¶¶ 43–44, Dkt. No. 1 (internal quotation marks and citation omitted). This case is controlled by *County of Sacramento v. Lewis*, 523 U.S. 833 (1998).

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Supreme Court in *Lewis* explained that "[t]he touchstone of due process is protection of the individual against arbitrary action of government, whether the fault lies in a denial of fundamental procedural fairness or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective." 523 U.S. at 845–46 (internal quotation marks and citations omitted). In that case, the Court considered whether police officers had violated the constitutional guarantee of substantive due process by causing a person's death during a high-speed chase. The Court held that an officer violates the substantive component of the Due Process Clause when his conduct "can be properly characterized as arbitrary, or conscious shocking, in a constitutional sense." *See id.* at 847 (internal quotation marks and citation omitted).

The Court noted that an officer does not violate "the Fourteenth Amendment's guarantee of substantive due process by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender." *Id.* at 836. Instead, "in such circumstances," the Court explained, "only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscious, necessary for a due process violation." *Id.* Stated differently, conscience-shocking behavior is likely to be found where the "conduct intended to injure [is] in some way unjustifiable by any government interest." *Id.* at 849. Following the Supreme Court's instruction, the Seventh Circuit has held that "even a minor traffic stop, and pursuit of a fleeing suspect after an unexplained flight

<div align="center">5</div>

from that stop, is a legitimate government interest." *Steen v. Myers*, 486 F.3d 1017, 1023 (7th Cir. 2007) (cleaned up).

The allegations in Plaintiffs' complaint do not plausibly support an inference that the Deputies' conduct shocks the conscience. The complaint contains no allegations that the Deputies intended to cause Plaintiffs harm. Plaintiffs allege that the Deputies engaged in unprofessional and irresponsible behavior by continuing an unwarranted and reckless high speed vehicle pursuit through a densely populated residential area during the evening rush hour of a school night. Compl. ¶¶ 21–23, 25, 41–42. They assert that the Deputies completely ignored the very obvious need for the safety of the public in the area of the pursuit. *Id.* ¶ 39. While these facts may support a finding of negligence or recklessness, Plaintiff's allegations do not rise to the level of conscience shocking or intentional conduct. In addition, the Deputies had a legitimate government interest in pursuing a fleeing Alexander. The fact that Alexander committed a municipal traffic violation does not mean that the Deputies were required to "overlook such transgressions when a suspect flees rather than stops his vehicle in response to flashing lights in the rearview mirror." *Winston v. City of Chicago*, 130 F. Supp. 3d 1218, 1224 (N.D. Ill. 2015).

"[H]igh-speed chases with no intent to harm suspects physically or worsen their legal plight do not give rise to liability under the Fourteenth Amendment." *Lewis*, 523 U.S. at 854. Because Plaintiffs have failed to plead facts to give rise to a plausible inference that the Deputies intended to cause harm or that their conduct shocks the conscience, the Deputies cannot be held liable under the Fourteenth Amendment. Therefore, Plaintiffs' Fourteenth Amendment claim must be dismissed.

<div align="center">6</div>

## B. Qualified Immunity

The Deputies argue in the alternative that they are entitled to qualified immunity. Although the court has concluded that the Deputies did not violate Plaintiffs' Fourteenth Amendment rights, for completeness, it will address this argument as well.

Under the doctrine of qualified immunity, government officials performing discretionary functions are immune from civil liability for constitutional violations "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam) (quoting *White v. Pauly*, 580 U.S. 73, 78–79 (2017) (per curiam)). In short, the doctrine "protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting another source).

The doctrine reflects an accommodation between the public interest in safeguarding constitutional guarantees on the one hand and, on the other, the concern that subjecting government officials to personal liability and harassing litigation would inhibit them in the performance of their duties. *Kisela*, 584 U.S. at 104. Moreover, as applied to law enforcement officers, the doctrine takes into consideration a unique feature of their job: officers are frequently required "to make split-second decisions in life-or-death situations." *Horton v. Pobjecky*, 883 F.3d 941, 950 (7th Cir. 2018). Thus, qualified immunity shields those officers who make reasonable, yet ultimately mistaken, decisions in the rapidly evolving, and often tense, line of duty.

Although qualified immunity is an available affirmative defense to defendants in a § 1983 suit, the plaintiff has the burden to overcome the defense. *Spiegel v. Cortese*, 196 F.3d 717, 723

7

(7th Cir. 1999). Qualified immunity requires the plaintiff to show "(1) conduct violating the plaintiff's constitutional or statutory rights that is (2) clearly established at the time of the violation such that a reasonable official would understand that what he is doing violates that right." *Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013) (internal quotation marks omitted). While a plaintiff is not required to present a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). In recent years, the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 & n.3 (2015) (quotation marks omitted). The Court has instructed: "An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate." *Id.* (internal quotation marks and citation omitted).

Here, the court must determine whether a constitutional rule applies with obvious clarity such that it placed the Deputies on notice that their conduct was unlawful. It must "examine Supreme Court precedent and precedent from [the Seventh Circuit] to determine whether a right was clearly established at the time of the violation." *Mason-Funk v. City of Neenah*, 895 F.3d 504, 508–09 (7th Cir. 2018) (citation omitted). Plaintiffs have not identified, and the court has not found, a controlling case or robust collection of persuasive authority analogous to the facts presented here that clearly establishes that the Deputies' conduct violated Plaintiffs' constitutional rights. Instead, Plaintiffs rely on the Deputies' alleged violations of Milwaukee County policy to establish that the constitutional right at issue was clearly established. But a violation of a county policy is not a violation of the Constitution. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir.

8

2003) ("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices."). Plaintiffs have not presented cases that put the constitutional questions in this case beyond debate. Accordingly, the Deputies are entitled to qualified immunity on Plaintiffs' claim.

## C. *Monell* Claim

Plaintiffs assert a claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), alleging that Milwaukee County failed to properly train, discipline, and supervise its deputy sheriffs regarding high-speed residential area vehicle pursuits. A county "cannot be liable under *Monell* when there is no underlying constitutional violation." *See Gonzalez v. McHenry County, Illinois*, 40 F.4th 824, 830 (7th Cir. 2022) (citing *Sallenger v. City of Springfield, Illinois*, 630 F.3d 499, 504 (7th Cir. 2010)); *see also Tesch v. County of Green Lake*, 157 F.3d 465, 477 (7th Cir. 1998) ("A failure to train theory or failure to institute a municipal policy theory requires a finding that the individual officers are liable on the underlying substantive claim."). Because the Deputies did not violate Plaintiffs' constitutional rights, Plaintiffs' *Monell* claim against the County must be dismissed.

## D. State Law Claims

Plaintiffs have alleged that the Deputies were negligent and that the County is required to indemnify them for such liability under Wis. Stat. § 895.46. Generally, when federal claims drop out of a case, federal courts decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3); *see Carlsbad Tech. Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."). The Seventh Circuit has described a "sensible presumption that if the federal claims drop out *before trial*, the district court should

9

relinquish jurisdiction over the state-law claims." *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007). The court follows this presumption and declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. Accordingly, Plaintiffs' state law claims against the defendants are dismissed without prejudice so that they may be pursued in a state forum.

### CONCLUSION

For the reasons set forth above, Defendants' motion for judgment on the pleadings (Dkt. No. 18) is **GRANTED** with respect to the federal claims, and such claims are dismissed. The remaining state law claims are dismissed without prejudice. The case is dismissed. The clerk is directed to enter judgment forthwith.

**SO ORDERED** at Green Bay, Wisconsin this 15th day of August, 2025.

William C. Griesbach
United States District Judge

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 12, 2025, the foregoing **APPELLANTS' BRIEF AND REQUIRED SHORT APPENDIX** have been electronically filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<div style="margin-left: 40%;">

ANDRIUSIS LAW FIRM, LLC
Electronically signed by
s/ Julius Andriusis
Wisconsin State Bar No. 1053784
Attorneys for Appellants

</div>

985 West Oklahoma Avenue
Milwaukee, WI 53215
Telephone: (414) 831-7929
andriusis@andriusislaw.com